STATE OF MINNESOTA   )
                     ) ss.   **AFFIDAVIT OF**
COUNTY OF HENNEPIN   )       **CHRISTOPHER V. LANGERT**

Christopher V. Langert, being duly sworn, deposes and states as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) where I have been employed since March 1998. In my capacity as a Special Agent, I have worked as a case agent and participated in investigations related to violent crime including carjacking, extortion, kidnaping and robbery.

2. I am an investigator or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3. This affidavit is submitted in support of a complaint charging Desmond Durelle GRAHAM (GRAHAM) with Carjacking, in violation of 18 U.S.C. § 2119, and Kidnapping, in violation of 18 U.S.C. § 1201(a)(1).

4. The facts set forth herein are based on my own personal observations, my review of police reports, and conversations I have had with other law enforcement personnel. The facts set forth herein do not include the complete facts related to this investigation, just those facts necessary to support probable cause for purposes of the Complaint.

## PROBABLE CAUSE

5. On the evening of Thursday, March 10, 2022, a man with the initials S.F. drove his vehicle, a 2010 silver Toyota Corolla, to a bar in downtown Minneapolis.[1] While in the bar, S.F. met an adult male previously unknown to him (hereinafter referred to as "Subject 2"). Subject 2 invited S.F. to an "afterparty" when the bar closed. S.F. agreed to drive Subject 2 to the afterparty. Subject 2 provided directions while S.F. drove his Toyota Corolla.

6. Subject 2's directions led them to an abandoned Speedway gas station located at 3744 Chicago Avenue South, Minneapolis, Minnesota. When S.F. pulled into the Speedway's parking lot an unknown white sedan pulled up and blocked S.F.'s path. Subject 2 then struck S.F. in the face, then turned off the vehicle's car engine and removed S.F.'s key from the vehicle's ignition. Subject 2 placed S.F.'s car keys into Subject 2's pocket. Subject 2 then forced S.F. out of his Toyota Corolla. Subject 2 forced S.F. into the Speedway as the unknown white sedan drove away. S.F. got a look at the driver of the unknown

---

[1] On April 4, 2022, I submitted an affidavit in support of a complaint in U.S. District Court charging GRAHAM with carjacking (22-mj-287 BRT). On April 11, 2022, I submitted an affidavit in support of a warrant in U.S. District Court to search T-Mobile records (22-mj-295 HB). In both of these affidavits, I recited statements S.F. made to me, as well as to other law enforcement officers. On April 29, 2022, I re-interviewed S.F. S.F. corrected his account, providing an account that differed from the account he had previously provided. This complaint is now submitted to correct the earlier affidavits, and update the Court with the corrected information.

white sedan, and identified the driver as a skinny black male with dreadlocks with whom Subject 2 had previously had interactions at the bar.

7. After taking S.F. into the abandoned Speedway, two other subjects emerged from within the Speedway (hereinafter referred to as "Subject 1" and "Subject 3"). The three subjects demanded money from S.F., beat S.F. with a hammer and a screwdriver, and punched and kicked S.F. The suspects threatened to stick S.F. with a needle they showed him, which they claimed was infected with HIV. The suspects also threatened to rape S.F. S.F. tried to run for the door but was caught and attacked by the suspects. The suspects dragged S.F. to the back of the Speedway, where S.F. was bound around the wrists and ankles with cloth, an extension cord, and black tape (possibly electrical tape). S.F. was placed on his knees and placed face-first on a sofa, where he spent several hours. Subject 2 directed Subject 1 to continue to attack the now bound S.F. by kicking him, punching him, headbutting him, and sitting on his head so that S.F. could not breathe. While this assault was taking place, Subject 2 and Subject 3 watched and discussed what they were going to do to S.F.

8. Subject 2 appeared to be the ringleader and in charge, giving direction to the other suspects.

9. The suspects went through S.F.'s pockets and found a bank VISA / ATM card for the business S.F. owns. They also found a bank ATM card for

S.F.'s personal account. S.F. feared that the suspects were going to kill him, so he surrendered his ATM PIN codes. Subject 2 used S.F.'s cell phone to check S.F.'s bank balance, and to make phone calls.

10. Subject 3, described by S.F. as a white adult male, then left the Speedway with S.F.'s business VISA / ATM card and PIN to withdraw money. Subject 3 asked Subject 2 if Subject 3 could use S.F.'s Toyota Corolla, but Subject 2 said no. Subject 3 did not return. Wells Fargo Bank records show an ATM withdrawal of $1,000 from S.F.'s business bank account at approximately 5:24 a.m. the morning of March 11, 2022, from a Wells Fargo Bank ATM located at 3030 Nicollet Avenue, Minneapolis, MN. A digital photo provided by Wells Fargo Bank shows a currently unidentified white male adult making this withdrawal.

11. At some point, Subject 2 left the abandoned Speedway at 3744 Chicago Avenue South, leaving Subject 1 to watch S.F. I obtained video surveillance from another Speedway gas station, located at 3453 Nicollet Avenue, Minneapolis, Minnesota. S.F. reviewed this Nicollet Avenue Speedway surveillance video, showing the outdoor gas pump area. S.F. recognized his Toyota Corolla pull up and park in front of a gas pump. S.F. also recognized Subject 2 get out of the driver's seat of S.F.'s car and enter the gas station. S.F. did not see anyone else in his car, nor did he see anyone exit the vehicle or enter it until Subject 2 reemerged on video, entering the driver's

door of the vehicle, and driving away. While Subject 2 was at the Nicollet Speedway, S.F. was still being held against his will at the abandoned Speedway on Chicago Avenue South. S.F. confirmed that he did not give Subject 2, or any other person, permission to use S.F.'s car.

12. Wells Fargo Bank records show another withdrawal of $1,000 from S.F.'s bank account at approximately 6:48 a.m. the morning on March 11, 2022, from a Wells Fargo Bank ATM located inside the Speedway at 3453 Nicollet Avenue. The surveillance video provided by that Speedway shows a black adult male wearing a shiny black puffy jacket with a distinctive logo patch on the left sleeve and another logo patch on the chest arrive as the driver in S.F.'s stolen Toyota Corolla. No other persons are observed in the vehicle.

13. S.F. did not know how long he was held, or what time of day it was, since the abandoned Speedway was dark inside. S.F. was asleep or unconscious at times while being held. At some point after being held for hours Subject 2 told S.F. that Subject 2 wanted to withdraw more money from S.F.'s bank account. Subject 2 told S.F. that S.F. could not be released because Subject 2 and Subject 1 needed to wait for the daily ATM withdraw limit to reset to withdraw more money. S.F. was left bound and beaten inside the business under watch of the suspects.

14. At some point Subject 2 and Subject 1 unbound S.F. and forced him into his Toyota Corolla. The suspects drove S.F. to a Wells Fargo branch

location and forced S.F. to go inside the bank to withdraw more money. Subject 2 told Subject 1 to go with S.F. to make sure that S.F. did not signal or warn the bank employees, and to make sure that S.F. otherwise complied with their demands. S.F. went inside the bank, accompanied by Subject 1. S.F. was forced to withdraw more money, which he gave to the suspects. S.F. has been told by Subject 2 that S.F. would be freed if he gave the money to Subject 2. However, S.F. was not freed, and he feared he would be killed by Subject 2 and Subject 1 if he tried to escape them again. Wells Fargo Bank records show a $1,000 withdrawal was made at approximately 7:18 a.m. the morning of March 11, 2022, from the bank branch located at 4712 Chicago Avenue, Minneapolis, Minnesota.

15. By this point S.F. was tired, hungry, dehydrated, and physically ill. Subject 2 and Subject 1 continued to hold S.F. against his will as they drove around in S.F.'s Toyota Corolla. S.F. estimated they drove for hours. At some point the subjects discussed going to St. Paul. Subject 2 then drove Subject 1 and S.F. to an unknown location, where Subject 2 appeared to buy drugs. Both suspects used drugs while Subject 2 drove from what S.F. believed was in or near St. Paul. At one point, Subject 1, seated in the front passenger's seat, became unresponsive. Subject 2 tried to wake Subject 1, but was unable to do so. Subject 2 drove back to the abandoned Speedway in Minneapolis and forced S.F. to help him bring the unresponsive Subject 1 back inside the business.

6

16. Through past police reports, I learned the cell phone number that Subject 2 had previously provided to law enforcement (GRAHAM also had this phone on him when he was arrested, as discussed later in this affidavit). A review of those cell phone records, obtained through a prior Minnesota state warrant and reviewed by an FBI cell phone records specialist, show that between 9:41 a.m. and 10:37 a.m. on March 11, 2022, Subject 2's device was at or near the abandoned Speedway; moved through Minneapolis, traveling along Interstate 94, to St. Paul; traveled within St. Paul; traveled along Interstate 94 from St. Paul towards Minneapolis; and returned to the abandoned Speedway.

17. Once back inside the abandoned Speedway, S.F. watched as Subject 2 continued to try to wake Subject 1. S.F. told Subject 2 that they should call for help, or call 911. After Subject 2 was unable to wake Subject 1, Subject 2 poured rubbing alcohol onto the torso of Subject 1. When S.F. asked what Subject 2 was doing, Subject 2 said he was going to set Subject 1 on fire to wake him up. S.F. protested, but Subject 2 lit Subject 1 on fire. When Subject 1 did not wake up after some time, Subject 2 put out the flames. Subject 2 still refused to call anyone for help. Subject 2 then told S.F. that "this" will wake Subject 1 up as he poured alcohol on the now burned skin of Subject 1. Subject 2 then poured the alcohol on the burns of Subject 1, but Subject 1 still did not wake. Subject 2 then forced S.F. to leave Subject 1 in the

7

abandoned Speedway and walked S.F. a block or two. Subject 2 and S.F. stopped by a white Chevrolet Tahoe SUV that S.F. believed to belong to Subject 2, as Subject 2 was able to get into it.

18. While outside on the street, S.F. saw an opportunity to try to escape. S.F. took off running towards a woman and asked her to call 911. The woman took out her phone as though she were going to help S.F., but she appeared to take notice of Subject 2 running towards her and S.F., and stopped out of fear. S.F. ran from the woman to the Cup Foods store and went inside the business to get help. Subject 2 continued to chase S.F. to Cup Foods, but did not follow him inside. The employees at Cup Foods called 911 for S.F., but told S.F. to go to the laundromat across the street to wait for police. S.F. ran to the laundromat and saw that his Toyota Corolla was no longer parked at the abandoned Speedway.

19. A man (hereinafter referred to as "Witness 1") was working at Cup Foods on March 11, 2022, when S.F. came running into the store. S.F. yelled that he had been robbed and that his vehicle had been stolen. Witness 1 told S.F. that Witness 1 would call the police. Although Witness 1 did not personally see the suspect, Witness 1 was approached by another employee who advised that the employee had earlier seen S.F. walking down the street with a male known to Cup Foods employees. Witness 1 said that he is aware of who that suspect is, as the suspect hangs out in front of the store frequently.

Witness 1 said employees get complaints from customers that the male, identified as Desmond Durelle GRAHAM, had robbed or harassed them. Witness 1 also reported that he knows GRAHAM to drive a white Chevrolet Tahoe.

20. The evening of March 11, 2022, S.F.'s brother located S.F.'s stolen vehicle in front of 3733 Columbus Avenue, Minneapolis, MN and called the Minneapolis Police Department. Police officers recovered the vehicle.

21. On March 11, 2022, Minneapolis police officers responded to a Dead On Arrival (DOA) call for service at the abandoned Speedway at 3744 Chicago Avenue South. Officers found an unresponsive black male (later identified as Larry Mosby) dead, with drug paraphernalia around him, and what appeared to be fresh burns on his torso and groin.

22. Investigation revealed GRAHAM to be associated with a 2002 White Chevrolet Tahoe, Minnesota License Plate number GAA767.

23. On March 17, 2022, S.F. was shown two photographic line ups and positively identified a photo of Desmond Durelle GRAHAM as Subject 2 and a photo of Larry Mosby as Subject 1.

24. On March 28, 2022, I learned from the Minneapolis Police Department that GRAHAM's 2002 white Chevrolet Tahoe was possibly in St. Paul, Minnesota, near the Speedway Gas Station at 390 Maryland Ave East, St. Paul, MN. The Minneapolis Police Department requested FBI assistance

9

to locate the Chevrolet Tahoe and determine who was its driver. Upon arrival I observed a white Chevrolet Tahoe bearing Minnesota license plate number GAA767 in the parking lot of the Speedway, facing south against the building to the west of the front door. Surveillance was established, and I observed GRAHAM come from the vehicle and enter the Speedway Gas Station. I recognized GRAHAM from several photographs of GRAHAM I viewed as part of this investigation.

25. Once additional law enforcement assistance arrived, Minneapolis police officers requested assistance in arresting GRAHAM for robbery. I observed GRAHAM exit the Speedway and get into the driver's seat of the white Chevy Tahoe. Law enforcement officers positioned their vehicles to prevent GRAHAM from fleeing, activated their emergency lights and siren to notify GRAHAM of their presence, exited law enforcement vehicles in law enforcement markings, and ordered GRAHAM to exit the vehicle. GRAHAM exited the vehicle and I placed him in handcuffs. At the time of his arrest GRAHAM was wearing a shiny black puffy jacket with a distinctive logo patch on the left sleeve and another logo patch on the chest, which matched the jacket worn by the black male who withdrew $1,000 from S.F.'s bank account on March 11, 2022.

26. I am aware that Toyota is a worldwide automobile manufacturing company headquartered in Aichi, Japan. The 2010 Toyota Corolla was

manufactured primarily in Japan or in Georgetown, Kentucky, with specific engine parts manufactured in plants throughout the United States and the world.

27. I am also aware that Interstate 94 is part of the national interstate highway system, linking Minnesota, Wisconsin, North Dakota, and other states.

28. Based on the foregoing, there is probable cause to believe that Desmond Durelle GRAHAM committed the offense of carjacking, in violation of 18 U.S.C. § 2119, and Kidnapping, in violation of 18 U.S.C. § 1201(a)(1).

Further your Affiant sayeth not.

_____
Christopher V. Langert
Special Agent, FBI

SUBSCRIBED and SWORN before me
by reliable electronic means via FaceTime
and email pursuant to Fed. R. Crim. P. 41(d)(3) on
April 29, 2022:

_____
JOHN F. DOCHERTY
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MINNESOTA

11